UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

FAUSAT AMOKE OGUNBAYO,

                 Plaintiff,

         - against -

MONTEGO MEDICAL CONSULTING P.C.,
ROBERT A. MEAD, PH.D, SHABNAM
SHAKIBAIE SMITH, M.D.,

                Defendants.

-----------------------------------------------------------------X

FAUSAT AMOKE OGUNBAYO,

                 Plaintiff,

         - against -

ADMINISTRATION FOR CHILDREN'S
SERVICES, CITY OF NEW YORK,

                Defendants.

-----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

11 CV 4047 (NGG)

12 CV 428 (NGG)

On August 23, 2011, plaintiff Fausat Amoke Ogunbayo ("Ogunbayo"), proceeding pro se,

commenced this Section 1983 civil rights action against Montego Medical Consulting, P.C.

("Montego"), Robert A. Mead, Ph.D. ("Mead"), and Shabnam Shakibaie Smith, M.D. ("Smith")

(collectively, the "medical defendants"), alleging that the medical defendants violated plaintiff's

civil rights by issuing a Report[1] to the New York City Administration for Children's Services

("ACS"), recommending that plaintiff's two sons remain in foster care until the plaintiff was

---

[1] Citations to "Report" refers to the Report issued by defendants dated July 18, 2008,
attached as Exhibit F to the Affidavit of Frank Dumont, Esq., filed November 21, 2011
("Dumont Aff.").

1

psychologically stabilized ("the first Complaint"). On January 21, 2012, plaintiff Ogunbayo filed a related Section 1983 action against ACS, alleging that ACS violated plaintiff's civil rights by causing her children to be placed in foster care ("the second Complaint").

By Notice of Motion filed on November 21, 2011, defendant Mead moved to dismiss plaintiff's first Complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted. By Motions filed on November 28, 2011, defendants Smith and Montego also moved to dismiss plaintiff's first Complaint on several grounds. On May 16, 2012, ACS filed its motion to dismiss plaintiff's second Complaint.

By Orders dated March 9, 2012 and April 12, 2012, the Honorable Nicholas G. Garaufis referred the motions to dismiss to the undersigned to prepare a Report and Recommendation. Having reviewed the parties' submissions, the Court respectfully recommends that defendants' motions to dismiss be granted for the reasons set forth below.

## BACKGROUND

On June 27, 2008, ACS filed a petition in Family Court alleging that plaintiff had neglected her two sons, aged 10 and 12 ("the neglect petition"). (Compl.2[2] at 5, Ex. B). On the same date, based on Orders issued by the Honorable Terrence McElrath of the Family Court

---

[2]Citations to "Compl.2" refer to plaintiff's Complaint in her action against ACS, filed on January 31, 2012.

2

(ACS Mem.[3] at 3),[4] ACS removed plaintiff's children from her home in Staten Island and placed them in foster care in Queens County. (Compl.2 at 1-3). Plaintiff complains that ACS's placement of her children in Queens County made it "extremely difficult for plaintiff to see and visit with her children." (Compl.2 at 7).

On July 17, 2008, plaintiff was referred by ACS to the medical defendants for an assessment of plaintiff's mental health status in connection with the neglect petition. (Compl.1[5] at 2, 4). The medical defendants submitted a Report to ACS summarizing their evaluation of plaintiff's psychological status, which ACS then used as evidence to support the neglect petition. (Id.; Compl.2 at 4). The Report noted that "Ms. Ogunbayo may benefit from psychotropic intervention to help regulate her mood and persecutory delusions" and recommended, *inter alia*, that plaintiff receive "long term psychotherapy. . . ." (Report at 8). The Report further recommended that plaintiff's "children should remain in foster care until [plaintiff] can be psychologically stabilized." (Id.)

Plaintiff alleges that the Report was negligently prepared and its findings were unfounded.[6] (Compl.1 at 2-3). She contends that the defendants failed to consult with plaintiff's

---

[3]Citations to "ACS Mem." refer to Defendants' Memorandum of Law in Support of their Motion to Dismiss, filed by ACS on May 16, 2012.

[4]Although plaintiff's Complaints do not refer to Judge McElrath's Orders that her children be removed from her custody and placed in foster care pending the Family Court proceedings, this fact does not appear to be in dispute.

[5]Citations to "Compl.1" refer to plaintiff's Complaint in her action against the medical defendants, filed on August 23, 2011.

[6]In the materials plaintiff submitted in response to defendants' motions to dismiss, she alleges that the Report's conclusions were "falsified and forged." (See, e.g., Plaintiff's Memorandum of Law in Opposition to Defendant Robert A. Mead's Motion to Dismiss, filed

3

treating physician, her "family, friends, support system and collaterals," the children's doctor, and their school before issuing the Report. (Id.) Plaintiff further claims that the medical defendants' conduct was done with "reckless disregard to the [C]onstitution" and "to the probability of plaintiff's children suffering emotional and mental distress" and that the medical defendants' conduct in submitting the Report constitutes medical malpractice, abuse of qualified professional privilege, and defamation. (Id. at 3).

On April 8, 2011, Judge McElrath issued a determination granting ACS' petition and finding that plaintiff's children should remain in foster care. (Id. at 3; Compl.1, Ex. B). On January 10, 2012, the Appellate Division, Second Department, reversed and vacated Judge McElrath's ruling in favor of ACS. The appellate court found that the Family Court had applied an incorrect legal standard in that the court failed to require ACS to show a probability of imminent harm to plaintiff's children. (Compl.2 at 2, Ex. D). On February 17, 2012, plaintiff's younger son was returned to her. (Tr.[7] at 4, 10). However, according to ACS, her older son, who had been charged with a criminal violation, remained in the custody of the state agency that operates the Division of Juvenile Justice. (ACS Mem. at 4). Plaintiff claims that her children's well-being deteriorated significantly after they were removed from her home in June 2008. (Compl.2 at 7-8).

Plaintiff has filed these suits seeking monetary damages from the defendants based on claims that defendants violated plaintiff's civil rights pursuant to 42 U.S.C. § 1983. (Compl.1 at

---

December 30, 2011 ("Pl.'s Opp. to Mead's Motion") at 5-6).

[7]Citations to "Tr." refer to the Transcript of Civil Cause for Oral Argument before the undersigned on July 18, 2012.

4

2; Compl.2 at 2). Plaintiff's Complaints can also be read to include several state law causes of action, including negligent infliction of emotional distress, medical malpractice, and defamation.

## DISCUSSION

### I. Insufficient Service of Process

As an initial matter, defendants Mead and Smith move to dismiss the plaintiff's first Complaint as against them on the basis that the Court lacks personal jurisdiction over them because they were not properly served with process, pursuant to Federal Rule of Civil Procedure 12(b)(5). (Mead's Mem.[8] at 18; Smith's Mem.[9] at 13).

As the Supreme Court noted in Henderson v. United States, "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objection." 517 U.S. 654, 672 (1996). In following the Supreme Court's definition of acceptable service, the Second Circuit has held that there must be service "reasonably calculated to provide actual notice of the action." Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 258 (2d Cir.), cert. denied, 502 U.S. 968 (1991). If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure, and does not waive formal service, the court lacks personal jurisdiction over the defendant. See Martin v. New York State Dep't of Mental Hygiene, 588

---

[8] Citations to "Mead's Mem." refer to the Memorandum of Law in Support of Defendant Robert A. Mead, Ph.D, Motion to Dismiss the Plaintiff's Complaint, filed on November 21, 2011.

[9] Citations to "Smith's Mem." refer to the Memorandum of Law in Support of Motion to Dismiss filed by defendant Smith on November 28, 2011.

5

F.2d 371, 373 (2d Cir. 1978), cert. denied, 445 U.S. 952 (1980). "Neither actual notice, nor

simply naming the person in the caption of the complaint will subject defendants to personal

jurisdiction if service was not made in substantial compliance with Rule 4." Jackson v.

Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982) (citations omitted).

Service of process in federal actions is governed by Rule 4 of the Federal Rules of Civil

Procedure, which provides, in relevant part, as follows:

> "An individual . . . may be served in a judicial district of the United States
> by: (1) following state law for serving a summons in an action brought in
> courts of general jurisdiction in the state where the district court is located
> or where service is made; or (2) doing any of the following: (A) delivering
> a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of
> abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by
> law to receive service of process."

Fed. R. Civ. P. 4(e). Looking to the relevant state law, service of process may be made under

New York C.P.L.R. § 308,

> By delivering the summons within the state to 1) "the person to be
> served;" 2) "a person of suitable age and discretion at the actual place of
> business, dwelling place or usual place of abode of the person to be
> served;" or 3) "to the agent for service of the person to be served as
> designated under rule 318. . ."

N.Y.C.P.L.R. §§ 308(1)-(3). New York C.P.L.R. § 318 states, in turn, that "A person may be

designated. . .as an agent for service in a writing, executed and acknowledged in the same

manner as a deed, with the consent of the agent endorsed thereon. . ." N.Y.C.P.L.R. § 308.

"[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of

proving adequate service." Dickerson v. Napolitano, 604 F.3d 732 (2d Cir. 2010) (quoting Burda

Media, Inc. v. Viertel, 417 F.3d 292 (2d Cir. 2005)).

6

Here, plaintiff's affidavit of service states that the medical defendants were all served via service on Anil Taneja, Esq., MBA. (Smith's Mem., Ex. B). Plaintiff claims that defendants Mead and Smith were served at their "last known office address, 244 Fifth Avenue [S]uite 2267, New York, NY 10001. . .as it appears on. . .[the Report]." (Pl.'s Opp. to Mead's Motion at 3-4; Pl.'s Opp. to Smith's Motion[10] at 2). This is the same address listed on Montego's letterhead. (See, e.g., Smith's Mem., Ex. H). Both Mead and Smith claim that Anil Taneja[11] was not designated by law to accept service of process on their behalf nor did he have authority to accept process on their behalf. (Mead's Mem. at 19; Smith's Mem. at 13). Plaintiff has not shown or even claimed that Mr. Taneja did have such authority. Further, Drs. Mead and Smith contend that since they are not employees of Montego, but rather independent contractors, Montego's office is not their primary place of business. (See Mead's Mem., Ex. 1; Smith's Mem., Ex. C ¶ 3). In short, Drs. Mead and Smith have claimed that plaintiff's attempted service of process was defective because it was not made directly to defendants, to a person of suitable age and discretion at defendants' actual place of business or dwelling place, nor to an authorized agent for service.

Since the Court is recommending that plaintiff's case against defendants Mead and Smith be dismissed on the basis that she failed to state a claim upon which relief may be granted, it is unnecessary to decide whether defendants Mead and Smith have been properly served. However,

_____

[10]Citations to "Pl.'s Opp. to Smith's Motion" refer to Plaintiff's Memorandum of Law in Opposition to Defendant Dr. Shabnam Shakibaie Smith's Motion to Dismiss, filed January 9, 2012.

[11]It is unclear whether Mr. Taneja is an employee of Montego or what, if any, relationship he has to Drs. Mead and Smith.

7

plaintiff should take note that any amended Complaint must be properly served on defendants in accordance with federal and state law.

## II. Motion to Dismiss For Failure to State a Claim

Defendants move to dismiss plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that plaintiff has failed to adequately allege specific facts necessary to "state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). (Defs.' Mem. at 7).

When deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Second Circuit has stated that a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); see also Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007), cert. denied, 553 U.S. 1093 (2008). In addition, the court must give plaintiff's claims "a liberal construction." Johnson v. New York City Transit Auth., 639 F. Supp. 887, 891 (E.D.N.Y. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), aff'd in part and vacated in part on other grounds, 823 F.2d 31 (2d Cir. 1987). However, the court is not required to accept the truth of legal conclusions couched as factual allegations. See Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal, the Supreme Court clarified the pleading standards under which courts are to evaluate a motion to dismiss, "arguably shift[ing] pleading standards from 'simple notice pleading' to a 'more heightened form of

pleading.'" Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009)). Now, when deciding a Rule 12(b)(6) motion to dismiss, the court should consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678; see also Hayden v. Paterson, 594 F.3d 150, 160-61 (2d Cir. 2010). Under this heightened pleading standard, labels, conclusions, and mere recitation of the elements of a cause of action will not suffice. Ashcroft v. Iqbal, 556 U.S. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. at 545. Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. However, "plausibility" does not rise to the level of probability but instead requires "'more than a sheer possibility that a defendant has acted unlawfully.'" Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d at 215 (quoting Ashcroft v. Iqbal, 556 U.S. at 678). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996). Ultimately, when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct" and plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied. Ashcroft v. Iqbal, 556 U.S. at 679.

9

Although a pro se litigant's pleadings are subject to the same rules, pro se complaints "'are held to less stringent standards than formal pleadings drafted by lawyers.'" Oyekoya v. United States, 108 F. Supp. 2d 315, 317 (S.D.N.Y. 2000) (quoting Santiago v. Meinsen, 89 F. Supp. 2d 435, 438 (S.D.N.Y. Feb. 25, 2000)). Thus, in analyzing plaintiff's Complaint, the Court is mindful that "'when [a] plaintiff proceeds pro se. . .a court is obliged to construe [her] pleadings liberally.'" Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). Construing pleadings liberally "entails, at the very least, a permissive application of the rules governing the form of pleadings." Id. Courts must also interpret these pleadings "to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (citations omitted). "This is particularly so when the pro se plaintiff alleges that her civil rights have been violated." Sealed Plaintiff v. Sealed Defendant, 537 F.3d at 191. Generally, in considering the adequacy of plaintiff's pleading, the court is limited to "the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999). However, the "Court may look to facts set forth in a pro se plaintiff's opposition papers as part of the pleadings." Amofa v. Bronx-Lebanon Hosp. Cntr., No. 05 CV 9230, 2006 WL 3316278, at *2 (S.D.N.Y. Nov. 13, 2006).

## III. Plaintiff's Federal Claims

### A. Elements of a Section 1983 Action

Plaintiff seeks monetary damages from the defendants based on claims that the defendants violated plaintiff's civil rights pursuant to 42 U.S.C. § 1983. (Compl.1 at 2; Compl.2

10

at 2). In order to state a valid claim for relief under Section 1983, the plaintiff must satisfy a two part test by alleging facts that demonstrate: (1) the defendants acted under color of state law and (2) the plaintiff was thereby deprived of a constitutionally or federally protected right. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986).

Under the first prong of this test, a plaintiff alleging constitutional violations under Section 1983 is "required to show state action." Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)), cert. denied, 539 U.S. 942 (2003); United States v. Price, 383 U.S. 787, 794 n.7 (1966); United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)), cert. denied, 502 U.S. 1091 (1992); see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 n.2 (2001) (noting that "[i]f a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for [Section] 1983 purposes") (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 935 (1982)). "It is axiomatic that the. . .Fourteenth [Amendment] and [Section] 1983, apply only to state actors." Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996). In addition, there must be an allegation that the defendant was personally involved in or actually caused a deprivation of plaintiff's constitutional rights. See Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978).

Where the alleged violation arises as a result of private conduct, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood

11

<u>Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. at 295 (quoting <u>Jackson v.</u>
<u>Metropolitan Edison Co.</u>, 419 U.S. 345, 351 (1974)). The Court in <u>Brentwood Academy</u>
emphasized that determining whether there is state action "is a matter of normative judgment,
and the criteria lack rigid simplicity. . . .[N]o one fact can function as a necessary condition
across the board for finding state action; nor is any set of circumstances absolutely sufficient, for
there may be some countervailing reason against attributing activity to the government." <u>Id.</u> at
295-96 (citing <u>National Collegiate Athletic Ass'n v. Tarkanian</u>, 488 U.S. 179, 193, 196 (1988))
(holding that a university's imposition of disciplinary sanctions against a basketball coach in
compliance with National Collegiate Athletic Association rules and recommendations did not
turn Association's otherwise private conduct into state action); <u>Polk Cnty. v. Dodson</u>, 454 U.S.
312 (1981) (finding that a public defender does not act "under color of state law" in performing a
lawyer's traditional functions as counsel to an indigent defendant in a state criminal proceeding)).

Eschewing any particular test, the Court in <u>Brentwood Academy</u> identified a "host of
facts that can bear on the fairness of . . . an attribution [of state action]." <u>Id.</u> at 296. Private
conduct may be state action: (1) "when it results from the State's exercise of 'coercive power;'"
(2) "when the State provides 'significant encouragement, either overt or covert;'" (3) "when a
private actor operates as a 'willful participant in joint activity with the State or its agents;'" (4)
"when [a private entity] is controlled by an 'agency of the State;'" (5) "when [a private entity]
has been delegated a public function by the State;" (6) "when [a private entity] is 'entwined with
governmental policies;'" or (7) "when government is 'entwined in [a private entity's]
management or control.'" <u>Id.</u> (citing cases). Furthermore, the Court recognized that state action
can be found only when "there is no substantial reason to claim unfairness in applying

12

constitutional standards to [the nominally private entity]." Id. at 298. At the same time, however, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) (citing cases).

In addition to establishing state action, a plaintiff seeking to impose liability on a municipality under Section 1983 must show that there was a custom or policy of the municipality that caused the deprivation of plaintiff's constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998). In the absence of a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," a municipality may not be held liable under Section 1983. City of Canton v. Harris, 489 U.S. 378, 385 (1989). Municipal liability under Section 1983 can not be found on the basis of respondeat superior alone. See Monell v. Dep't of Soc. Servs., 436 U.S. at 694-95; Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991).

Thus, to establish municipal liability against the City under Section 1983, plaintiff must demonstrate that the violation of his rights was caused by (1) the application of a formal policy or procedure adopted by the City, see Monell v. Dep't of Soc. Servs., 436 U.S. at 690-91; (2) actions taken by a City official who is responsible for establishing final policy on the issue, see Walker v. City of New York, 974 F.2d 293, 296-97 (2d Cir. 1992), cert. denied, 507 U.S. 961 (1993); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) an unlawful practice of subordinate officials that was sufficiently widespread to be considered a "custom or usage" acquiesced in by policymaking officials, see Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992); see also City of St. Louis v. Praprotnik, 485

13

U.S. 112, 127 (1988) (plurality opinion); or (4) the failure to properly supervise and train municipal employees where the failure "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." City of Canton v. Harris, 489 U.S. at 388; Walker v. City of New York, 974 F.2d at 297-98.

## B. Deprivation of a Constitutionally or Federally Protected Right

Plaintiff[12] seeks monetary damages from the defendants based on claims that defendants violated plaintiff's civil rights pursuant to 42 U.S.C. § 1983. (Compl.1 at 2; Compl.2 at 2). It is axiomatic that "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994) (internal citations omitted). The exact nature of the constitutional violations alleged by the plaintiff in this case is somewhat unclear; however, it appears that plaintiff intends to claim violations of her substantive due process right to family integrity and her right to procedural due process.[13] (Id.; Pl.'s Opp. to ACS's Motion at 10). In seeking to dismiss

_____

[12]It is well established that a litigant proceeding pro se may not represent anyone other than herself. KLA v. Windham Southeast Supervisory Union, 348 Fed. Appx. 604, 605-606 (2d Cir. 2009). This prohibition applies to parents who wish to represent their children. See id.; Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284-85 (2d Cir. 2005); Cheung v. Youth Orchestra Found. Of Buggalo, Inc., 906 F.2d 59, 61 (2d Cir. 2005). To the extent plaintiff has alleged violations of her children's rights, these claims may proceed only if a lawyer is retained to represent her children.

[13]Plaintiff does not use the term procedural due process or cite a specific section of the United States Constitution in either of her Complaints. Rather, in her first Complaint, she claims that the medical defendants committed a "violation of the fundamental procedural fairness." (Compl.1 at 2). Construing plaintiff's Complaints liberally, as this Court must, see Sealed Plaintiff v. Sealed Defendant, 537 F.3d at 191, the Court infers that plaintiff's intention was to allege that the medical defendants violated plaintiff's right to procedural due process.

Plaintiff's second Complaint does not refer to a violation of her right to procedural due

14

plaintiff's Complaints, defendants contend, *inter alia*, that plaintiff's Section 1983 claims must be dismissed because plaintiff has failed to adequately allege a violation of a constitutional right. The Court finds, for the reasons stated below, that plaintiff has failed to allege facts that plausibly demonstrate that plaintiff was deprived of a constitutionally or federally protected right. Rather, plaintiff presents only legal conclusions and factual allegations that allow no more than an inference of a "mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. at 679.

It is well-established that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment. . .and that few consequences of judicial action are so grave as the severance of natural family ties." M.L.B. v. S.L.J., 519 U.S. 102, 103 (1996) (quoting Santosky v. Kramer, 455 U.S. 745, 774, 787 (1982)). Thus, although "the State has a profound interest in the welfare of the child, interference with family integrity must comport with procedural and substantive due process" guarantees. Velez v. Reynolds, 325 F. Supp. 2d 293, 303 (S.D.N.Y. 2004). In this context, "procedural due process generally requires a hearing prior to depriving a parent of custody or a prompt post-deprivation hearing if the child is removed under emergency circumstances, whereas substantive due process protects individuals from arbitrary government intrusions by requiring a reasonable basis or justification for such actions." Id. Parents and

---

process. However, in her memorandum filed in opposition to ACS's motion to dismiss, plaintiff states: "Instead of 90 days [as purportedly required by the New York Family Court Act], the Administration for Children's Services, City of New York, prosecuted plaintiff for over two years. . . .The order issued for the placement of plaintiff's children in foster care by Family Court. . .is a due process violation." (Plaintiff's Reply to Defendant's Motion to Dismiss, filed June 20, 2012 ("Pl.'s Opp. to ACS's Motion") at 10). The Court infers from this language in plaintiff's opposition papers, see Sealed Plaintiff v. Sealed Defendant, 537 F.3d at 191; Amofa v. Bronx-Lebanon Hosp. Cntr., 2006 WL 3316278, at *2, that plaintiff also intended to allege a procedural due process violation against ACS.

15

children have a substantive due process right "to remain together without the coercive interference of the awesome power of the state." Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977).

To prevail on a substantive due process claim based on a claimed interference with her rights as a parent, a plaintiff must prove, first, that she has been separated from her children, and, next, that the separation was "so shocking, arbitrary and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999), cert. denied, 529 U.S. 1098 (2000); see also Anthony v. City of New York, 339 F.3d 129, 143 (2d Cir. 2003).

Interpreting plaintiff's pleadings "to raise the strongest arguments that they suggest," Brownell v. Krom, 446 F.3d at 310, plaintiff makes four specific claims that seem to allege violations of plaintiff's constitutional right to family integrity or procedural due process: 1) the medical defendants' gross negligence and willful misconduct in their assessment of plaintiff's psychological status caused plaintiff to lose custody of her children (see Compl.1 ¶¶ 3, 8-11); 2) ACS's investigation of plaintiff was negligent and its petition to Family Court was unfounded (see Compl.2 at 2, 4-6); 3) ACS's decision to place plaintiff's children in foster care in Queens County made it extremely difficult for plaintiff, who lives in Richmond County, to visit her children (Compl.2 at 4, 7); and 4) the duration of the Family Court proceeding was excessive. (see Compl.2 at 2).

### 1) Plaintiff's Claims Against the Medical Defendants

With respect to plaintiff's claims against the medical defendants, plaintiff alleges that the medical defendants acted improperly in writing the Report because they did not consult

16

plaintiff's physicians, her children's pediatrician, her children's school, or plaintiff's "family, friends, support system and collaterals." (Compl.1 ¶¶ 4-7). She also claims that the Report contradicted statements made by plaintiff's doctors (Compl.1 at 6) and subjected her to adverse decisions in the child neglect proceedings. (Compl.1 ¶ 12). However, "the right to family integrity does not include a constitutional right to be free from child abuse investigations," Cornigans v. Mark Country Day School, No. 03 CV 1414, 2006 WL 3950335, at *7 (E.D.N.Y. July 12, 2006), and the Court sees no basis for plaintiff's contention that due process requires medical investigators to consult with a patient's doctors or others when performing their investigation.

More importantly, plaintiff has not alleged that the medical defendants were personally involved in or actually caused a deprivation of plaintiff's constitutional rights. See Williams v. Smith, 781 F.2d at 323. The children were removed from Ms. Ogunbayo's home based on Orders issued by the Family Court, prior to any alleged involvement on the part of the medical defendants. The ACS petition was filed in Family Court on June 27, 2008 (Compl.2 at 4); the children were removed that same day based on the Court's Orders (id.); and plaintiff was not referred to the medical defendants until three weeks later, on July 17, 2008. (Compl.1 at 2). Thus, plaintiff fails to allege facts that plausibly demonstrate a causal connection between the conduct of the medical defendants and the initial removal of her children.

Although plaintiff alleges that the medical defendants' Report was subsequently submitted as evidence in the Family Court proceeding, and Judge McElrath presumably considered the findings of the Report, it is impossible to determine what role the medical defendants' Report played in the judge's April 8, 2011 decision to continue the plaintiff's

17

children in foster care. Given the other testimony and evidence submitted to the Family Court by ACS, this Court would be required to review the Family Court proceedings which led to the temporary termination of plaintiff's parental rights in order to determine whether the medical defendants' Report was a major factor in Judge McElrath's decision. Such an inquiry would exceed this Court's jurisdiction.[14]

Particularly, in the area of Family Court matters, which is inherently an area left to the states, the Federal Court is reluctant to review state court proceedings.[15] Neustein v. Orbach, 732 F. Supp. 333, 339 (E.D.N.Y 1990) (dismissing a mother's civil rights action challenging state court rules because the case would have required the federal court to become "embroiled in factual disputes concerning custody and visitation matters); see also Fariello v. Rodriguez, 148 F.R.D. 670, 675-76 (E.D.N.Y. 1993), aff'd, 22 F.3d 1090 (2d Cir. 1994); Lhotan v. D'Elia, 415 F. Supp. 826, 827 (E.D.N.Y. 1976). Even though here the Court is only asked to award damages, and not to take any action that would affect the outcome of the Family Court proceeding, it "[can] not do so without analyzing the basis for the custody determination. Such action this Court is not equipped nor is it prepared to undertake." Neustein v. Orbach, 732 F. Supp. at 339.

In short, whether or not the medical defendants' examination of plaintiff was incomplete or incorrect, plaintiff has failed to allege facts that would allow the Court to infer that her

---

[14]It is well-established under the Rooker-Feldman doctrine that federal district courts have no power to review state court proceedings or to set aside decisions rendered by a state court. See D.C. Ct. of App. v. Feldman, 460 U.S. 462, 482-84 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).

[15]Further, plaintiff had appropriate state law remedies at her disposal, including direct appeal to the Appellate Division, which she exercised. (See Compl.2, Ex. D). Federal review of the state court proceedings in this instance would unduly interfere with the independence of the state judicial system.

18

constitutional rights were violated as a result of any action on the part of the medical defendants.

## 2) Plaintiff's Claims Against ACS

The Court next turns to plaintiff's allegations against ACS.[16] With respect to plaintiff's allegation that ACS's investigation of plaintiff was negligent and its petition to Family Court unfounded, plaintiff contends that ACS had brought a similar case against her only three months earlier, which was "closed unfounded." (Compl.2 at 2). To further support her claim, she asserts that a medical assessment, performed not long before ACS's investigation began, found "no evidence. . .of any mental illness" in plaintiff. (Compl.2 at 6).

The state's interest in the protection of minor children, "though compelling, is not so compelling as to derogate a parent's constitutional rights completely." Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir. 1999), cert. denied, 528 U.S. 1155 (2000). In the context of child services investigations, "[c]ase workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence." Id. However, "the difficulty of balancing the weighty interests apparent in the abuse context. . .has prompted courts to impose few concrete restrictions on case workers, in exercising their discretion, short of these obvious extremes." Id.

The Second Circuit's standard governing case workers reflects the recognized need for unusual deference in the abuse investigation context. "An investigation passes constitutional

---

[16]ACS, as a New York City agency, may not be sued independently pursuant to Section 396 of the New York City Charter. N.Y. City Charter Ch. 17 § 396 (providing that "All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency. . ."). Should plaintiff's case be allowed to proceed, she should amend her Complaint to name the City of New York as a defendant.

19

muster provided simply that case workers have a 'reasonable basis' for their findings of abuse."
Id. (quoting van Emrik v. Chemung Cnty. Dep't of Social Serv., 911 F.2d 863, 866 (2d Cir.
1990)). "In applying a reasonableness standard in the abuse context, courts must be especially
sensitive to the pressurized circumstances routinely confronting case workers, circumstances in
which decisions between difficult alternatives often need to be made on the basis of limited or
conflicting information." Id. at 105 (internal quotations omitted); see also van Emrik v.
Chemung Cnty. Dept. of Social Services, 911 F.2d at 866.

In this case, ACS based its neglect petition in part on a report that plaintiff had "exhibited
inappropriate behavior in that on or about June 19, 2008, [plaintiff] told her physician that her
children's skin was getting darker each day due to radiation, causing the doctor concern for the
children's safety." (Compl.2, Ex. A). Plaintiff disputes this, claiming that she is unaware of any
physician who could have reported her as mentally unstable on June 19, 2008. (Compl.1 at 6).
However, in addition to the physician's report, the ACS petition cites the statement of one of
plaintiff's children, who allegedly reported that his mother had "left rice on the stove and when
she returned to the kitchen she stated that there was some rice missing from the pot and that it
was the work of the F.B.I. trying to poison them again." (Compl.2, Ex. A). The ACS petition
also alleges that plaintiff left her "children home alone for up to seven hours after school and all
day on weekends." (Id.) In her papers, plaintiff does not specifically deny either her son's
statement that she believed the F.B.I. was stealing her rice or that she left her children alone for
long periods of time.

In light of the representations in the ACS petition, the case workers seem to have had a
"'reasonable basis' for their findings." Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d at 104

20

(quoting van Emrik v. Chemung Cnty. Dep't of Social Serv., 911 F.2d at 866). Plaintiff's allegations that an earlier ACS investigation was dismissed as unfounded and that a recent medical assessment did not report her having mental illness do not demonstrate that ACS lacked a "reasonable basis" for their initial finding of neglect, nor are they sufficient to plead that the ACS case workers' actions were "shocking, arbitrary, and egregious." Tenenbaum v. Williams, 193 F.3d at 600. ACS case workers must often work with conflicting information, and plaintiff has not alleged facts that would plausibly suggest that there was overwhelming exculpatory information available to the ACS case workers which they proceeded to ignore.

Although plaintiff also contends that ACS fabricated the existence of a doctor who reported her as mentally unstable on June 19, 2008, unsupported allegations that case workers manufactured evidence to maliciously pursue a neglect petition are not sufficient to sustain a claim that the case workers' actions violated plaintiff's due process rights. See Emerson v. City of New York, 740 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2010) (holding that plaintiff who claimed ACS case workers "knowingly violated the law and manufactured false evidence to obtain a wrongful conviction" had failed to plead sufficient facts to plausibly suggest that the case workers' actions were "shocking, arbitrary, and egregious. . ."). Even if plaintiff had alleged that ACS case workers were motivated by animus against the plaintiff, "in the case of a child protective investigation, the existence of a reasonable basis for the filing of a Family Court petition is sufficient to demonstrate that the government action would have been taken even in the absence of some retaliatory motive." Graham v. City of New York, No. 11 CV 5747, 2012 WL 2154257, at *12 (E.D.N.Y. June 14, 2012).

Plaintiff's allegation that ACS placed her children in foster care in Queens County rather

21

than Richmond County similarly fails to demonstrate a violation of plaintiff's due process rights. Plaintiff contends that this placement made it "extremely difficult" for plaintiff to see her children. The Court recognizes that the distance between Richmond County and Queens County would make it quite inconvenient for plaintiff to visit her children. However, decisions about where to place children in foster care are within the discretion of ACS employees, as guided by the best interest of the child. See 18 N.Y.C.R.R. § 430.11. At this point, without knowing why ACS placed the children in this particular home and without any further allegations that would suggest an abuse of discretion, the Court finds that plaintiff has failed to allege sufficient facts to state a claim that ACS's decision to place plaintiff's children in a different borough within New York City is so "shocking, arbitrary, and egregious" as to "shock the contemporary conscience." Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012).

Next, plaintiff has alleged that the duration of the Family Court proceeding that resulted in her temporary loss of custody was excessively long and therefore violated her right to family integrity and procedural due process. Plaintiff's children were first removed from her home on June 27, 2008, and it was not until April 8, 2011, nearly three years later, that Judge McElrath issued his determination resolving the Family Court petition. By the time the Appellate Division issued its decision on January 10, 2012, plaintiff's children had been out of her custody for three years and six months. The Appellate Division, reversing and vacating the Family Court decision, remarked that "it took an inordinate amount of time to commence and complete the fact-finding hearing"[17] (Compl.2, Ex. D at 3); however, the court's decision to reverse was not

---

[17]The New York Family Court Act Section 1049 requires the Family Court to give scheduling "priority to proceedings. . .in which a child has been removed from home before a final order of disposition. Any adjournment granted in the course of such a proceeding should be

22

based on the delay.

While the Court sympathizes with plaintiff's frustration due to the duration of the Family Court proceedings, plaintiff has not alleged facts that demonstrate that ACS was responsible for the delayed resolution of the neglect proceeding against plaintiff. Plaintiff does not dispute that, on June 27, 2008, her children were removed from her home pursuant to separate Orders issued on the same day by Judge McElrath. (ACS Mem. at 3). This "intervening judicial confirmation of the basis for removal" absolves ACS and its officers of liability for the continuation of the allegedly wrongful separation of plaintiff and her children. Southerland v. City of New York, 680 F.3d at 153-54. "Only if a plaintiff can show that the government's request for removal or an order of protection was summarily approved by the Family Court on the basis of false or greatly flawed ACS representations, or that the judicial proceeding was otherwise substantially tainted, will a court-ordered separation be found to infringe on a parent's substantive due process rights." Graham v. City of New York, 2012 WL 2154257, at *12. Although Judge McElrath's decision was eventually reversed, the Appellate Division's reversal was based on the Family Court's application of an incorrect legal standard, not on the length of the proceedings or based on delay. Plaintiff has not alleged any substantial procedural irregularities in the Family Court proceeding that could be attributed to ACS. In the absence of such allegations, "the intervening, independent judicial determination – the actual cause of the plaintiff's deprivation – absolves the defendants of liability." Id., at *13.

In sum, plaintiff has failed to plausibly allege that ACS or the medical defendants violated her constitutional rights. Therefore, plaintiff's Complaint does not satisfy the federal

---

for as short a time as is practicable." N.Y. Family Ct. Act § 1049.

23

pleading standard of Rule 8(a)(2). Accordingly, this Court respectfully recommends that plaintiff's action be dismissed for failure to state a claim upon which relief can be granted.

## C. Actions Under Color of State Law - The Medical Defendants

In seeking to dismiss plaintiff's first Complaint, the medical defendants also contend that plaintiff's Section 1983 claims must be dismissed because plaintiff has failed to allege that any of the medical defendants acted under color of state law.

Plaintiff alleges in her first Complaint that Montego, a professional corporation, and Drs. Mead and Smith violated her constitutional rights by issuing a Report summarizing plaintiff's psychological status to ACS for use as evidence in the neglect petition underlying this action. She alleges that, because the Report may have led to Judge McElrath's decision to issue an order finding that plaintiff's children should remain in foster care, the Report caused "personal hardships and grievous harm" to the plaintiff and her children. Plaintiff alleges that ACS "made an appointment for plaintiff" with the medical defendants, and that the medical defendants based their Report on the evaluation they performed during this appointment. (Compl.2 at 4).

Plaintiff has not alleged facts that would allow the Court to infer that there was a sufficient nexus between the conduct of the medical defendants and that of the state. "The purpose of [the state action requirement] is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (holding that Medicaid recipient plaintiffs had failed to establish "state action" by nursing homes where the state responded to the nursing homes' decisions by adjusting the plaintiffs' Medicaid benefits). Here,

24

plaintiff's Complaint against the medical defendants is based on the allegation that their conclusions about her mental status were unfounded and unduly influenced the Family Court to plaintiff's detriment. However, her allegations do not show that the state was responsible for the specific conduct of writing the ostensibly unfounded Report.

Beyond ACS's consultation with the medical defendants and the subsequent use of the Report by the Family Court, plaintiff does not allege any further connection between the medical defendants and ACS or any other governmental entity. Plaintiff has not alleged that ACS influenced the substance of the medical defendants' evaluation or directed them to draw any particular conclusion in their Report. The medical defendants did not represent the state, nor were they authorized to take any official action on behalf of the state; rather, Drs. Mead and Smith were asked to exercise their independent professional judgement in evaluating Ms. Ogunbayo. That ACS used the Report to support the neglect petition does not turn the medical defendants into state actors. See Colabella v. American Institute of Certified Public Accountants, No. 10 CV 2291, 2011 WL 4532132, at *13 (E.D.N.Y. 2011) (holding that "the state's use of professional assessments [of accountants] privately executed by a private entity does not automatically cloak the entity with the state's authority. . ."); see also Blum v. Yaretsky, 457 U.S. 991 (holding that the state's response to nursing homes' decisions did not render the state responsible for those decisions).

In short, based on the allegations in plaintiff's first Complaint, there is no claim that the medical defendants' conclusions, drawn from their psychological evaluation of Ms. Ogunbayo, were not made independently of "the State's exercise of coercive power." Brentwood Acad. v. Tennessee Secondary Scho. Athletic Ass'n, 531 U.S. at 298. Although ACS may have employed

25

the services of the medical defendants, the medical defendants' actions, as currently alleged, may not "fairly [be] treated as that of the State itself." Id. at 295.

Accordingly, even if plaintiff could state a constitutional violation, the Court respectfully recommends that plaintiff's Section 1983 claims against Montego, Mead, and Smith be dismissed for failure to allege state action on the part of the medical defendants.

D. Unconstitutional Policy, Custom or Practice - ACS

In seeking to dismiss plaintiff's second Complaint, ACS contends that plaintiff's Section 1983 claims against New York City and ACS must be dismissed because plaintiff has failed to allege the existence of an unconstitutional policy, custom, or practice.

A plaintiff seeking to impose liability on a municipality under Section 1983 must show that there was a custom or policy of the municipality that caused the deprivation of plaintiff's constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. at 690-91; DeCarlo v. Fry, 141 F.3d at 61. Here, plaintiff has not alleged the existence of a municipal custom or policy, nor has she alleged a nexus between such policy or custom and the harm she suffered; rather, plaintiff's second Complaint and opposition papers are completely silent as to any alleged policy or custom of unconstitutional conduct. Plaintiff has not alleged that there was a formal policy or procedure adopted by the City that was applied to her in connection with ACS's conduct that violated her constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. at 690-91. Nor has she alleged that the actions of a City official with policy-making authority violated her rights. See Walker v. City of New York, 974 F.2d at 296-97. She has not alleged facts that would establish an unlawful practice of subordinate officials that was sufficiently widespread to be considered "custom or usage." See Sorlucco v. New York City Police Dep't, 971 F.2d at 871.

26

Finally, there are no allegations in the Complaint that the City failed to properly supervise and train municipal employees amounting to "deliberate indifference to the rights of those with whom municipal employees will come into contact." City of Canton v. Harris, 489 U.S. at 388; Walker v. City of New York, 974 F.2d at 297-98.

Instead, plaintiff's second Complaint claims that ACS, and by implication unnamed ACS employees,[18] violated plaintiff's constitutional rights. Even assuming, *arguendo*, that the actions of individual ACS employees did in fact violate plaintiff's constitutional rights, nothing in plaintiff's second Complaint indicates that such unconstitutional actions were undertaken pursuant to City policy, that they were widespread enough to be considered custom or usage, or that they were a result of improper supervision or training. A municipality may not be held liable under Section 1983 on the basis of respondeat superior alone. See Monell v. Dep't of Soc. Servs., 436 U.S. at 694-95; Ricciuti v. N.Y.C. Transit Auth., 941 F.2d at 122. Allegations of isolated violations by individual City employees, especially employees below the policy-making level, are insufficient to state a claim for municipal liability under Section 1983. See DeCarlo v.

_____

[18]To date, plaintiff has not named any individual ACS case workers as defendants in this case, nor has she identified in her Complaint the name of any specific ACS employee who allegedly acted in violation of her rights. To meet minimum pleading standards, a plaintiff must name defendants who were personally involved with the alleged constitutional violation, Lovanyak v. Cogdell, 955 F. Supp. 172, 174 (E.D.N.Y. 1996); accordingly, to impose liability on the City for the unconstitutional conduct of its employees, plaintiff must name the individual case worker or workers who allegedly infringed upon her rights. See Soto v. Brooklyn Correctional Facility, 80 F.3d 34, 35 (2d Cir. 1996) (holding that "to maintain a [S]ection 1983 action arising from conduct that was not alleged to have been part of any institutional custom or policy," a litigant should name as defendants the "officers responsible" for the alleged violation); see also, e.g., Lukes v. Nassau Cnty. Jail, No. 12 CV 1139, 2012 WL 1965663 (E.D.N.Y. May 29, 2012) (requiring plaintiff to "clearly identify the individual(s) personally responsibly for any alleged violation of his constitutional rights" in his amended complaint).

27

Fry, 141 F.3d at 61.

Accordingly, the Court respectfully recommends that plaintiff's claim against ACS be dismissed because it fails to allege an unlawful municipal custom or policy.

### E. Qualified Immunity

#### 1. Immunity under Federal Law

Even if plaintiff's Complaints were not subject to dismissal for the reasons stated above, the doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages under federal claims insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Emerson v. City of New York, 740 F. Supp. 2d at 390 (citing Wilson v. Layne, 526 U.S. 603, 609 (1999); Ayers v. Ryan, 152 F.3d 77, 82 (2d Cir. 1998)). The defense of qualified immunity reflects an attempt by the courts to balance the competing interests of "a damages remedy to protect the rights of citizens" with "'the need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982) (quoting Butz v. Economou, 438 U.S. 478, 504-05, 506 (1978)).

Redefining the limits of qualified immunity in essentially objective terms, the Court in Harlow v. Fitzgerald held that qualified immunity shields government actors from liability for damages when they are sued in their personal capacity, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818. See also Ford v. McGinnis, 352 F.3d 582, 596

28

(2d Cir. 2003). Accordingly, if the law was clearly established, then a defense of qualified immunity will generally fail, "since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. at 818-19. If the official "can prove that he neither knew nor should have known of the relevant legal standard," then the defense should succeed. Id.

Thus, a government official is entitled to qualified immunity either where "his conduct did not violate 'clearly established rights' of which a reasonable person would have known, or [where]. . .it was 'objectively reasonable' to believe that his acts did not violate these clearly established rights." Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir. 1990) (citing Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967 (1990), and Calamia v. City of New York, 879 F.2d at 1035). "A government official's actions are objectively unreasonable only 'when no officer of reasonable competence could have made the same choice in similar circumstances." Emerson v. City of New York, 740 F. Supp. 2d at 391 (quoting Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995)).

The Supreme Court has held that police officers who bring warrants allegedly causing an unconstitutional arrest are entitled to qualified immunity, Malley v. Briggs, 475 U.S. 335 (1986), and the Second Circuit has since held that case workers deciding whether to remove children are the "functional equivalent" of police officers making arrests for the purposes of qualified immunity. Cornejo v. Bell, 592 F.3d at 128. Indeed, the Second Circuit has explicitly held that child protective services case workers are government officials entitled to qualified immunity for their actions in removing a child from the parents' custody during a child abuse investigation. van Emrik v. Chemung Cnty. Dep't of Social Serv., 911 F.2d at 865. See also Cornejo v. Bell,

29

592 F.3d 121, 128-29 (2d Cir. 2010); Chayo v. Kaladjian, 844 F. Supp. 163, 169 (S.D.N.Y. Feb. 19, 1994). Although plaintiff has not named any individual ACS case workers, the case workers would be entitled to qualified immunity, absent a showing that their conduct was objectively unreasonable in light of well-established *constitutional or statutory law*.

Additionally, although plaintiff's claims against the medical defendants are subject to dismissal because she has not plausibly alleged that they are state actors for the purposes of Section 1983, the medical defendants may also be able to assert the defense of qualified immunity in this case. In this case, the role of the medical defendants in the underlying neglect petition appears to have been investigatory in nature and analogous to that of ACS caseworkers; they were retained to assist ACS in investigating plaintiff's mental status and her ability to care for her children. To the extent that plaintiff can show that the medical defendants acted under color of state law, the Court sees no meaningful way to distinguish the medical defendants from ACS case workers for the purpose of determining entitlement to qualified immunity.

The "threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002); see also Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 101 (2d Cir. 2003). Since the Court finds that plaintiff has not plausibly alleged a constitutional violation by the defendants, the Court can not determine whether the named defendants could successfully assert a defense of qualified immunity under federal law.

### 2. Immunity under State Law

Both the medical defendants and ACS also claim immunity from suit under New York State Social Services Law § 419. Section 419 provides, in pertinent part: "Any person, official,

30

or institution participating in good faith in the providing of a service pursuant to. . .this title, the making of a report, the taking of photographs, or the removal or keeping of a child pursuant to this title shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions."

The Federal law of immunity applies to claims under Section 1983. See Cornejo v. Bell, 592 F.3d at 130 (citing Gross v. Rell, 585 F.3d 72, 81 (2d Cir. 2009)) (applying New York State immunity law under Section 419 to the plaintiff's state law claims against ACS case workers, but applying the federal law of immunity to plaintiff's Section 1983 claims); see also V.S. v. Muhammad, 595 F.3d 426, 430-32 (2d Cir. 2010). Since the Court recommends dismissing plaintiff's federal law claims and recommends that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims (see discussion infra), the Court finds it unnecessary to consider defendants' immunity under the New York State Social Services Law at this time.

## III. Supplemental Jurisdiction

"Where federal claims in an action premised on federal question jurisdiction are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Emerson v. City of New York, 740 F. Supp. 2d at 396 (quoting Castellano v. Board of Trustees, 937 F.2d 752, 758 (2d Cir. 1991). In both of her Complaints, plaintiff invokes the federal question jurisdiction of this Court pursuant to 28 U.S.C. § 1331. (Compl.1 at 1, Compl.2 at 1).

These cases have not proceeded beyond the early stages of litigation. There has been little activity beyond the initial pleadings and the instant motions, and the parties have not yet

31

engaged in discovery. Further, these cases potentially implicate important state and Family Court matters. Accordingly, because the Court has recommended dismissing all of plaintiff's federal claims brought under Section 1983, this Court respectfully recommends that the district court decline to exercise supplemental jurisdiction over any state law claims pleaded in plaintiff's Complaints.

## V. Consolidation

On April 12, 2012, the issue of whether the two cases, Docket Nos. 12 CV 428 and 11 CV 4047 should be consolidated for some or all issues was referred to the undersigned for decision, pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). On April 18, 2012, this Court Ordered the parties to submit any opposition to consolidation by July 13, 2012. As of the date of this Report and Recommendation, neither party has raised any objections. The Court finds that, as the two cases share significant operative facts, consolidation would promote judicial economy and not prejudice either party. Accordingly, the Court Orders that the cases be consolidated.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that defendants' motions to dismiss be granted. Plaintiff, as a pro se litigant, should be given an opportunity to amend her Complaints in order to state a claim. Lovanyak v. Cogdell, 955 F. Supp. at 174 (citing Elliot v. Bronson, 872 F.2d 20, 22 (2d Cir. 1989); Salahuddin v. Cuomo, 861 F.2d 40, 43 (2d Cir. 1988)). Accordingly, the Court recommends that plaintiff's case be dismissed without prejudice to

32

amend within 14 days in accordance with the above.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure

to file objections within the specified time waives the right to appeal the District Court's order.

See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health &

Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

### SO ORDERED.

Dated: Brooklyn, New York
September 18, 2012

/s/ Cheryl Pollak

Cheryl L. Pollak
United States Magistrate Judge