UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

FAUSAT AMOKE OGUNBAYO,

         **MEMORANDUM & ORDER**

         11-CV-4047 (NGG) (CLP)

    Plaintiff,

 -against-

MONTEGO MEDICAL CONSULTING, P.C.,
ROBERT A. MEAD, PH.D, SHABNAM
SHAKIBAIE SMITH, M.D.,

    Defendants.

------------------------------------------------------------------X

FAUSAT AMOKE OGUNBAYO,

         12-CV-428 (NGG) (CLP)

    Plaintiff,

 -against-

ADMINISTRATION FOR CHILDREN'S SERVICES,
CITY OF NEW YORK,

    Defendants.

------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

 Before the court are the parties' objections to Magistrate Judge Cheryl L. Pollak's Report and Recommendation ("R&R") that advised granting Defendants' motions to dismiss. For the reasons set forth below, the R&R is ADOPTED in part and MODIFIED in part.

1

I. **BACKGROUND**

A. **Factual Allegations**

On June 27, 2008, the New York City Administration for Children's Services ("ACS") filed a petition in New York State Family Court alleging that Plaintiff had neglected her two sons, then aged ten and twelve. (Compl., Ogunbayo v. Admin. for Children's Servs., No. 12-CV-428 (NGG) (CLP) (E.D.N.Y. Jan. 31, 2012) ("ACS Action"), Dkt. 1 ("Compl. 2"), Ex. B.) The petition alleged that Plaintiff's children were in "imminent danger of becoming impaired" because of Plaintiff's abnormal behavior. (Id. at 5.) For instance, Plaintiff allegedly told her doctor that her children's skin was getting darker each day because of "radiation," and one of her children reported that Plaintiff believed the F.B.I. was trying to poison them. (Id.) The petition also stated that Plaintiff failed to cooperate with ACS or receive any medical treatment. (Id. at 6.) That day, Family Court Judge Terrence McElrath preliminarily granted the petition, and ACS removed Plaintiff's children from her home. (ACS Mem. (ACS Action, Dkt. 16) at 3.)

On July 17, 2008, ACS referred Plaintiff to Defendants Robert A. Mead, Ph.D, and Shabnam Shakibaie Smith, M.D., of Defendant Montego Medical Consulting, P.C. (collectively, "Medical Defendants") for a mental health evaluation. (Compl., Ogunbayo v. Montego Med. Consulting, P.C., No. 11-CV-4047 (NGG) (CLP), (E.D.N.Y. Aug. 23, 2011) ("Montego Action"), Dkt. 1 ("Compl. 1") at 2, 4.) After meeting with Plaintiff, the Medical Defendants compiled a report recommending that she receive "long term psychotherapy" and that her children "remain in foster care until [she] can be psychologically stabilized." (Psychiatric and Psychological Report, Compl. 1, Ex. A ("Report"), at 8.) According to Plaintiff, these conclusions were grossly negligent, falsified, and forged. (See Pl. Opp'n Mem. (Montego

2

Action, Dkt. 46), at 5-6.) She alleges that the Medical Defendants did not consult her physician, the children's physician, or their school before issuing the Report. (Compl. 1 at 2-3.)

On April 8, 2011—nearly three years after his initial order—Judge McElrath granted ACS's petition and ruled that Plaintiff's children remain in foster care. See In re Joseph A., Jr., 937 N.Y.S.2d 250, 251 (2d Dep't 2012). Plaintiff appealed, and on January 10, 2012, the Appellate Division, Second Department reversed, ruling that Judge McElrath erroneously did not determine whether ACS had established a probability of *imminent* harm to Plaintiff's children, as was legally required. Id. at 251-52. After the Second Department's decision, Plaintiff's youngest child was returned to her (Compl. 1, Ex. E), but her older son remained in the state's custody because of a criminal violation (Oct. 5, 2012, Ltr. (ACS Action, Dkt. 25)).

Plaintiff now brings these two actions seeking damages from ACS and the Medical Defendants pursuant to 42 U.S.C. § 1983 and various state and local laws. (Compl. 1 at 10; Compl. 2 at 10.) Construing her pro se Complaints liberally, see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006), Plaintiff alleges two types of constitutional harms: violations of the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment.

B.  **Procedural History**

Plaintiff filed her first Complaint against the Medical Defendants on August 23, 2011. (Compl. 1.) She filed her second Complaint against ACS on January 31, 2012. (Compl. 2.) After these cases were consolidated (see Apr. 18, 2012, Order (Montego Action, Dkt. 65)), all Defendants moved to dismiss the applicable Complaints (see Medical Def. Mot. Dismiss (Montego Action, Dkts. 25, 29, 30); ACS Mot. Dismiss (ACS Action, Dkt. 15)). On March 9, 2012, the court referred all of the motions to Judge Pollak for an R&R. (Mar. 9, 2012, Order

(Montego Action, Dkt. 61).)

On September 18, 2012, Judge Pollak issued her R&R, which recommended that the court grant Defendants' motions. (R&R (Montego Action, Dkt. 69; ACS Action, Dkt. 22).) Judge Pollak advised granting the Medical Defendants' motions because: (1) there is "no basis for plaintiff's contention that due process requires medical investigators to consult with a patient's doctors or others when performing their investigation" (id. at 17); and (2) the Complaints failed to "allege facts that plausibly demonstrate a causal connection between the conduct of the medical defendants and the initial removal of her children"[1] (id. at 17-19). As to ACS's motion, Judge Pollak concluded that the Complaints failed to state a claim because: (1) the ACS workers had a "reasonable basis" for their findings (id. at 19-21); (2) the decision to place Plaintiff's children in a different borough of New York City was not "shocking, arbitrary, [or] egregious" (id. at 21-22); and (3) Plaintiff did not allege facts suggesting that "ACS was responsible for the delayed resolution of the neglect proceeding" (id. at 23). Judge Pollak did recommend granting Plaintiff leave to file amended complaints. (Id. at 32.)

Plaintiff and each of the Medical Defendants object to the R&R. Plaintiff objects broadly to the R&R's findings, reiterating her claims that the ACS workers fraudulently and negligently misrepresented her mental health status in Family Court, in violation of the Equal Protection and Due Process Clauses and various state laws. (Pl. Obj. (ACS Action, Dkt. 23; Montego Action, Dkt. 70) at 3-6.) Plaintiff also states that the Medical Defendants "forged and falsified" their report on the "court ordered" report compiled on Plaintiff. (Id. 15-17.)

---

[1] As part of this analysis, Judge Pollak suggested that the court could not determine what role the Report played in Judge McElrath's decision without running afoul of the Rooker-Feldman doctrine (R&R at 18 & n.14), noting that federal courts are "reluctant" to review state court proceedings involving "Family Court matters" (id. at 18). However, Judge Pollak did not definitively conclude that the domestic relations exception to federal jurisdiction applied. (Id.)

4

Defendant Montego objects to: (1) the recommendation to grant Plaintiff leave to amend the Complaints; and (2) the R&R's failure to decide whether the domestic relations exception to federal jurisdiction barred the action. (Montego Obj. (Montego Action, Dkt. 74).) Defendant Mead objects to: (1) the R&R's failure to decide whether the court has personal jurisdiction over Mead; (2) the recommendation to grant Plaintiff leave to amend the Complaints; and (3) the R&R's failure to decide whether the statute of limitations bars Plaintiff's claims. (Mead Obj. (Montego Action, Dkt. 72).) Defendant Smith objects only to the R&R's failure to address the statute of limitations question. (Smith Obj. (Montego Action, Dkt. 75).)

## II.  STANDARD OF REVIEW

In reviewing the report and recommendation of a dispositive matter from a magistrate judge, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). The district court reviews de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). However, to obtain this de novo review of a magistrate judge's R&R, an objecting party "must point out the specific portions of the report and recommendation to which [he or she] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS) (WDW), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2).

## III.  DISCUSSION

### A.  Domestic Relations Exception

Montego maintains that the court cannot pass on the merits of Plaintiff's claims because it lacks the authority to do so under the domestic relations exception to federal jurisdiction. (Montego Obj. ¶ 2.)

5

The Supreme Court has long recognized an exception to the jurisdiction of federal courts for certain matters concerning domestic relations. See Ankenbrandt v. Richards, 504 U.S. 689, 694-95 (1992). Federal courts clearly do not have the "power to issue divorce, alimony and child custody decrees." Id. at 703.[2] However, whether this doctrine applies to federal suits that challenge the propriety of state proceedings but do not seek the issuance or modification of a domestic relations decree is not so clear. Some courts have applied the domestic relations exception where the plaintiff, although seeking only damages, "[a]t heart, . . . is complaining of the state court custody proceedings." McKnight v. Middleton, 699 F. Supp. 2d 507, 519-20 (E.DN.Y. 2010). Others have similarly applied the exception where a decision on the merits would require "analyzing the basis for the [state] custody determination." See Neustein v. Orbach, 732 F. Supp. 333, 339-40 (E.D.N.Y. 1990).

But other courts have declined to dismiss suits for lack of jurisdiction where the plaintiff seeks damages to remedy alleged constitutional violations in connection with an improper state domestic relations proceeding. For instance, in Renaud v. Mattingly, No. 09-CV-9303 (GBD), 2010 WL 3291576 (S.D.N.Y. Aug. 10, 2010), a foster parent asserted procedural and substantive Due Process claims arising from the removal of her foster children. Id. at *1. The court declined to apply the domestic relations exception because "[t]he issue before th[at] court [was] whether Plaintiff was afforded sufficient due process protection pursuant to the U.S. Constitution and d[id] not involve the issuance of a custody decree." Id. at *4 n.7.

Here, Plaintiff also does not seek the issuance of a custody decree. Rather, she seeks damages to compensate her for the alleged procedural and substantive Due Process violations that occurred during the Family Court proceedings, which have since ended. (See Compl. 1 at

---

[2] Although Ankenbrandt explained that the exception applies to suits based on diversity jurisdiction, 504 U.S. at 706, the doctrine also applies to those cases that satisfy federal question jurisdiction, see Ellis v. Little Flower Children's Servs., No. 99–CV–0503 (RR), 2000 WL 516887, at *4–5 (E.D.N.Y. Mar. 21, 2000).

10; Compl. 2 at 10.) Federal courts routinely undertake such constitutional determinations, which counsels against applying the exception. Cf. Ankenbrandt, 504 U.S. at 703 ("Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees."). Indeed, in each of the authorities cited by Montego, the plaintiff challenged the validity of a custody *order*, not the infirmities of the relevant *proceedings*. (See Montego Mem. of L. (Montego Action, Dkt. 31) at 7-9.) Accordingly, the court is satisfied that it has subject matter jurisdiction and overrules Montego's objection.

### B. Claims Against the Medical Defendants

#### 1. *Personal Jurisdiction*

Mead challenges Judge Pollak's decision to address the Montego Complaint's merits because Plaintiff did not properly serve him with the Complaint and thus the court does not have personal jurisdiction over him. (Mead Obj. ¶ 5.)

Ordinarily, a challenge to personal jurisdiction should be decided before proceeding to the merits of the case. Chevron Corp. v. Naranjo, 667 F.3d 232, 246 n.17 (2d Cir. 2012). However, the Second Circuit has instructed that

> in cases . . . with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [courts] may address first the facial challenge to the underlying cause of action and, if [they] dismiss the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants.

Id.

In this consolidated action, ACS was served with the relevant Complaint. (See Summons (ACS Action, Dkt. 4).) Because the court dismisses the claims against Mead in their entirety for

7

the reasons set forth below, it declines to address his personal jurisdictional argument.

    2. *Statute of Limitations*

Smith and Mead object to the R&R's failure to address their argument that the Complaints are time-barred. (See Smith Obj. ¶¶ 6-9; Mead Obj. ¶ 8.)

"In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions . . . .'" Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted) (alterations in original). In New York, this period is three years. See N.Y. C.P.L.R. § 214(5); see also Pearl, 296 F.3d at 79.

"Although state law governs the applicable limitations period, federal law governs when a federal claim accrues." Allen v. Mattingly, No. 10-CV-0667 (SJF) (ARL), 2011 WL 1261103, at *10 (E.D.N.Y. Mar. 29, 2011) (citing Wallace v. Kato, 549 U.S. 384, 388 (2007) and Covington v. City of N.Y., 171 F.3d 117, 121 (2d Cir. 1999)). "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages . . . even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391.

Here, the Medical Defendants issued the Report on July 18, 2008. (See Compl. 1 at 2-4.) Plaintiff then became aware of the Medical Defendants' allegedly improper procedures and fraudulent findings.[3] At this point, Plaintiff began to suffer her alleged damages, including reputational injuries (see id. at 7), which is sufficient to start the statute of limitations clock. See Allen, 2011 WL1261103, at *11 ("Plaintiff's Section 1983 . . . claims against [a court-referred doctor] accrued . . . when [she] allegedly treated plaintiff's son . . . which ultimately resulted in

---

[3] Although not explicitly addressed, all indications from the Complaints are that Plaintiff received a copy of the Report immediately after it was issued. In any event, Plaintiff was entitled to receive this report upon demand. See Family Court Act § 1038(b) ("Pursuant to a demand made under [C.P.L.R. 3120], a petitioner . . . shall provide to a respondent . . . any records . . . demanded relevant to the proceeding, for inspection and photocopying.").

his removal from plaintiff's custody . . . ."). Although the "full extent of the injury [was] not then known" because Judge McElrath had not made a final determination as to ACS's petition, which presumably relied on the Report, this is legally irrelevant. See Wallace, 549 U.S. at 391.

Plaintiff did not file the Montego Action until August 23, 2011, more than three years after Smith and Mead issued their Report. (See Compl. 1.) The Complaints assert no basis for tolling the statute of limitations. Therefore, Plaintiff's federal claims against Smith and Mead alleged in the Montego Action are time-barred and must be dismissed with prejudice. See Thomas v. City of N.Y., No. 09-CV-3162 (CM) (HBP), 2010 WL 1729828, at *2 (S.D.N.Y. Apr. 22, 2010) (dismissing claims with prejudice because the statute of limitations had run).

Strangely, Montego did not object to the R&R's failure to address the statute of limitations argument it raised to Judge Pollak in its motion to dismiss. (See Montego Mem. at 12.) However, the court awards no deference to matters that the R&R failed to address. See Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM) (JO), 2010 WL 985294, at *1 n.1 (E.D.N.Y. Mar. 15, 2010) ("As the court finds no clear error *as to the portions of the Report and Recommendation* that are not the subject of specific objections by plaintiffs, those portions are adopted in full . . . ." (emphasis added)); cf. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination *of those portions of the report* . . . to which objection is made." (emphasis added)). Accordingly, for the reasons set forth above, the federal claims against Montego are also dismissed with prejudice.

### D. Claims Against ACS

#### 1. *Procedural Due Process Claims*

Construing her papers liberally, Plaintiff objects to the R&R's finding that she did not suffer a procedural Due Process violation. (See Pl. Obj. at 6 ("[P]laintiff was not allowed to

9

present her case at the Family Court . . . in the child neglect proceeding against plaintiff . . . ."), 23 ("Although plaintiff's children were very eager and willing to testify, plaintiff's children were not allowed to testify . . . [and] plaintiff should have been allowed to present her case . . . .").) Plaintiff also complains of the delay between the initial removal of her children on June 28, 2008, and Judge McElrath's ultimate ruling on ACS's petition on April 8, 2011. (Id. at 27.)

However, there is no indication that any of these alleged procedural infirmities were caused by ACS. ACS presented its case to a neutral fact-finder, which made a judicial ruling according to its own procedures. The ACS Complaint does not set forth any facts supporting a plausible inference that ACS workers were responsible for Plaintiff's alleged failure to properly present her case in Family Court. Similarly, as Judge Pollak noted, "[P]laintiff has not alleged facts that demonstrate that ACS was responsible for the delayed resolution of the neglect proceeding against plaintiff." (R&R at 23.) Absent any causal link to ACS, Plaintiff's procedural Due Process claims are dismissed.

        2.     *Substantive Due Process Claims*

Plaintiff also complains of Judge Pollak's recommendation to dismiss the substantive Due Process claims against ACS. Interpreting her objections liberally, Plaintiff maintains that ACS violated her fundamental right to raise her children when the investigators falsely asserted that Plaintiff was mentally unstable and not receiving any treatment because, in fact, she was mentally stable and therefore did not need treatment. (See Pl. Obj. at 3, 6, 24.)

"'To establish a violation of substantive due process rights [in the child custody context], a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Southerland v. City of N.Y., 680 F.3d 127, 151 (2d Cir. 2012) (citation omitted). However, ACS case workers receive "unusual

deference" such that "a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected." Id. at 152.

Here, Plaintiff's allegations as to ACS are nothing more than challenges to ACS's ultimate determination that Plaintiff was mentally unstable and that her children were in imminent danger. But even if ACS was mistaken, Plaintiff's own Complaints demonstrate that the case workers had a reasonable basis for their position. For instance, Plaintiff routinely left them alone for "up to seven hours after school and all day on weekends." (Compl. 2, Ex. B at 5.) One of her children also said that Plaintiff once left rice on the stove, and when she returned to the kitchen she believed that "there was some rice missing from the pot and that it was the work of the F.B.I. trying to poison them again." (Id.) ACS also was aware of other previous abnormalities, including that Plaintiff had called the 311 hotline because "someone [was] trying to pull out her organs," and that she believed her children's skin was getting darker because of radiation. (Compl. 2, Ex. F at 2.) It is also undisputed that Plaintiff had refused any treatment. (Id. at 2-3.) Absent specific allegations that each of these facts was fabricated, the case workers had an objectively reasonable basis for their actions. See Villanueava v. City of N.Y., No. 08-CV-8793 (LBS), 2010 WL 1654162, at *10 (S.D.N.Y. Apr. 14, 2010) (dismissing substantive Due Process claims, in part, because the plaintiff allegedly exhibited signs of mental health problems).

Moreover, although later overturned on appeal, Judge McElrath's decision further supports this conclusion because "an intervening independent judicial determination that a reasonable basis exists for limiting the exercise of parental rights generally cleanses any subsequent infringement of unconstitutional taint." Graham v. City of N.Y., No. 11-CV-5747

11

(JBW), 2012 WL 2154257, at *12 (E.D.N.Y. June 14, 2012) (citation omitted); cf. Estiverne v. Esernio-Jensenn, 833 F. Supp. 2d 356, 374 (E.D.N.Y. 2011) ("[W]hen the facts upon which the judicial tribunal relies are themselves false or misleading, court confirmation will not 'suffice to show that [the caseworker's] conduct had an objectively reasonable basis.'" (quoting Southerland, 652 F.3d at 231) (alteration in original)). Plaintiff's substantive Due Process claims therefore must fail.[4]

E.  **State Law Claims**

Plaintiff also seems to object to Judge Pollak's recommendation that the court decline to exercise supplemental jurisdiction over her state law claims. (See Pl. Obj. at 7, 15, 18-19, 30-32 (describing alleged violations of New York law).)

Reviewing the issue de novo, the court agrees with Judge Pollak and finds that it is appropriate to dismiss the remaining state law claims against all of the Defendants without prejudice. See Emerson v. City of N.Y., 740 F. Supp. 2d 385, 340 (S.D.N.Y. 2010) ("Where federal claims in an action premised on federal question jurisdiction 'are dismissed before trial . . . the state claims should be dismissed as well.'" (quoting Castellano v. Bd. of Trs., 937 F.2d 752, 758 (2d Cir.1991)).

F.  **Leave to Amend**

Smith, Mead, and Montego all object to Judge Pollak's recommendation to grant Plaintiff leave to amend. (See Mead Obj. ¶ 7; Smith Obj. ¶ 9; Montego Obj. ¶ 7.) As discussed above, Plaintiff's § 1983 claims against these Defendants are time-barred, and are therefore dismissed

---

[4] The Second Department's reversal of Judge McElrath's decision does not alter this conclusion. That court determined that Judge McElrath did not apply the correct legal standard in evaluating ACS's petition, that is, that ACS had not shown that Plaintiff's children were in immediate harm. In re Joseph A., Jr., 937 N.YS.2d at 252. Although the court defers to this ultimate finding as a matter of comity, the Second Department did not decide whether the ACS workers at least had a reasonable basis to believe that Plaintiff's children were "abused or neglected." See Southerland, 680 F.3d at 152.

with prejudice. The R&R is modified accordingly.

ACS does not challenge Judge Pollak's recommendation to grant Plaintiff leave to amend. The court therefore reviews this decision for clear error and agrees that Plaintiff, proceeding pro se, should be afforded an opportunity to amend the ACS Complaint. This portion of the R&R is therefore adopted. Accordingly, Plaintiff is granted thirty days to amend her ACS Complaint.

If Plaintiff decides to amend this Complaint, the court advises her that an amended complaint: (1) will completely replace her original ACS Complaint; (2) must name the City of New York, not ACS, as a defendant, see N.Y. City Charter Ch. 17 § 796; and (3) must either name the specific ACS case workers who allegedly violated her constitutional rights as defendants, see Soto v. Brooklyn Corr. Fac., 80 F.3d 34, 35 (2d Cir. 1996), and/or identify some ACS policy or custom responsible for her injuries, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978).

## IV. CONCLUSION

Judge Pollak's R&R is ADOPTED in part and MODIFIED in part. Plaintiff's § 1983 claims against the Medical Defendants are DISMISSED with prejudice. The state law claims asserted against these Defendants are DISMISSED without prejudice. The Clerk of Court is respectfully directed to close Ogunbayo v. Montego Medical Consulting, P.C., No. 11-CV-4047.

All of Plaintiff's claims against ACS are DISMISSED without prejudice. Plaintiff is granted thirty days from the date of this order to re-plead as set forth above.

SO ORDERED.

Dated: Brooklyn, New York
   December _17_, 2012

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

13